Filed 7/10/26  In re H.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re H.R., a Person Coming Under the Juvenile Court Law. | C103366 |
| | (Super. Ct. No. JV142026) |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>H.R.,<br><br>     Defendant and Appellant. | |

The juvenile court found H.R. (the minor) committed a lewd or lascivious act on a child under the age of 14 by means of force, violence, duress, menace, or threat of great bodily injury (Pen. Code, § 288, subd. (b)(1)).[1]  On appeal, the minor contends substantial evidence does not support either of the prosecution's theories that he acted with force or duress.  Under the applicable and deferential substantial evidence standard of review, we find the evidence sufficient to sustain the offense based on either force or duress.  We therefore affirm.

_____

[1] Undesignated statutory references are to the Penal Code.

1

# I. BACKGROUND

In March 2023, the district attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) alleging that when the minor was between 16 and 17 years old, he committed a forcible lewd act on the then nine-year-old victim, N.D. (§ 288, subd. (b)(1)).

During a contested jurisdictional hearing, N.D. testified that she had known the minor and his family her whole life. The minor's mother was N.D.'s godmother and the minor and his younger brother were her godbrothers. N.D. was very close with the minor's brother and considered both boys to be like her older brothers. N.D. periodically stayed the night at their home, and she would sleep in either the brother's room or the living room. She ordinarily would not go into the minor's bedroom unless his brother or mother were present.

One day in 2019, N.D. visited the minor's home while his brother was not there. She and the minor played video games in the living room and then went into the minor's bedroom alone. According to N.D., the bedroom had a nightstand with several different lotions on it. While sitting on the minor's bed, the two watched YouTube videos. N.D. recalled one of the videos saying "something about a boner, [but she] didn't know what that was" at the time.

After watching the videos, the minor asked N.D. to play a game with the lotions. The minor closed the bedroom door, grabbed some lotion and a bandana, made N.D. get up from the bed, and started to pull her pants down. N.D. asked the minor what he was doing and told the minor "no" and that she did not want to play the lotion game, but he insisted, saying, "no, let's just play." He pulled her pants and underwear down to her ankles and sat behind her.

The minor put the blindfold on himself, sat on the ground behind N.D., and rubbed lotion on N.D.'s buttocks with his hand. N.D. was scared and confused about what was happening. N.D. testified that the minor touched her on her "whole butt," and rubbed

2

lotion on it twice, but never squeezed her buttocks. The minor grabbed N.D.'s hips and pulled her back towards his face; she could feel his nose and breathing on her buttocks. When she tried to pull away, he told her "not to get loud, or [she] wasn't going to be able to see [his mother or brother again], and [she] wouldn't have been able to go over there" because she "would be in trouble." Because she loved going to their house and did not want to lose their close relationship, she "stayed quiet." She also testified that the minor said he was going to "hit me or hurt me." N.D. said she interpreted the statement as a threat.

N.D. tried to pull up her clothes, but the minor pulled them down again; he had "a grip on [her] thigh." She asked him to pull her pants up, but he told her no. The minor pulled his shorts down, exposed his buttocks, and tried to make N.D. switch places so she could put lotion on him. N.D. was disgusted and tried to move away from the minor.

N.D. testified that she was too scared to tell anyone what happened because she was afraid she would never see her godmother or the minor's younger brother again and that she had done something wrong. She finally disclosed the incident to a friend three years later. She then told a counselor, who reported the incident to police.

After reporting the abuse, N.D. participated in a special assault forensic evaluation (SAFE) interview. A video recording and transcript of the interview were admitted as evidence during the hearing.

N.D.'s SAFE interview largely tracked her trial testimony, but differed in some respects. During the interview, N.D. said that the minor told her she would get in "very big trouble" if she told but not that he threatened to hurt her. She also did not tell the interviewer that the minor had grabbed her thigh to keep her from getting away or had pulled his own pants down to reveal his buttocks, instead saying nothing happened with the minor's clothing.

N.D. did tell the SAFE interviewer that when the minor pulled her buttocks towards his face, he "grabbed my waist and pulled me and I told—I was like trying to

3

pull up my pants. And, um, like he had like a really tight grip on me and, um, I couldn't, like bend over. And so, um, I tried to move but I couldn't." When she tried to bend over to pull up her pants and underwear "his grip would get tighter." She told him to stop so she could pull up her pants, but he told her no. She was scared the minor would "do something else" because she had heard stories that he had pressured other girls at school to engage in sexual acts.[2]

The minor testified on his own behalf and denied the incident ever occurred. The minor denied ever being alone in his bedroom with N.D., rubbing lotion on her buttocks, grabbing her by the waist, sniffing lotion on her, or owning or wearing a blindfold. He also denied having a nightstand or multiple lotions in his bedroom when the incident allegedly occurred, although he admitted to having at least one lotion in his room.

The minor's younger brother testified that N.D. was like a sister to him. He said N.D. never mentioned any inappropriate behavior by minor.

The minor's mother testified that N.D. had been like a daughter to her and used to be her "goddaughter." She had known N.D. since she was born, and prior to the incident she had never known N.D. to be untrustworthy. N.D. had never spent the night at the mother's home when the minor's brother was not present. She said the minor did not have a nightstand in his bedroom in 2019, and that his dresser may have had one lotion but not several lotions.

Following the close of evidence, the district attorney argued two theories of liability under section 288, subdivision (b)—that the minor used force, or that he used duress, to accomplish the lewd act of rubbing lotion on N.D.'s buttocks. Defense counsel

---

[2] The juvenile court admitted N.D.'s statement regarding the minor allegedly sexually pressuring other girls for the nonhearsay purpose of showing N.D.'s state of mind but did not admit the statement for its truth (i.e., that the minor had in fact sexually harassed or assaulted other girls).

argued N.D. was not credible because she had given several versions of the alleged events, and the evidence did not show force or duress.

After considering the evidence and the parties' arguments, the juvenile court found beyond a reasonable doubt that the minor committed a forcible lewd act within the meaning of section 288, subdivision (b) and sustained the wardship petition. At disposition, the juvenile court adjudged the minor a ward of the court (Welf. & Inst. Code, § 725, subd. (b)) and committed the minor to his own care and custody under the supervision of the probation department. The court committed the minor to the Youth Detention Facility for time served and ordered him to complete 97 days of electronic monitoring and 50 hours of community service.

The minor timely appealed.

## II. DISCUSSION

The minor contends insufficient evidence supports the juvenile court's true finding on the forcible lewd act count. He argues substantial evidence does not show he committed the offense by means of force or duress. We disagree.

When reviewing a sufficiency of the evidence challenge in a juvenile case, we apply the same standard that governs in adult criminal cases. (*In re Amanda A.* (2015) 242 Cal.App.4th 537, 545; *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) We examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*In re Amanda A., supra*, at p. 545.) The trier of fact, and not the reviewing court, must weigh the evidence, resolve conflicting inferences, and determine whether the prosecution established guilt beyond a reasonable doubt. (*People v. Hubbard* (2016) 63 Cal.4th 378, 392.) "[I]f the circumstances reasonably justify the trier of fact's findings, the reviewing court's view that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment." (*Ibid.*)

5

Section 288, subdivision (b) prohibits lewd acts "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 288, subd. (b)(1).)  Force, in this context, has a specialized legal definition. (*People v. Soto* (2011) 51 Cal.4th 229, 242.)  The force used must be " 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' " (*Ibid.*, citing *People v. Cicero* (1984) 157 Cal.App.3d 465, 474, disapproved on other grounds in *Soto, supra*, at p. 248, fn. 12.)

" 'A defendant uses "force" if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act.' " (*People v. Morales* (2018) 29 Cal.App.5th 471, 480.)  " '[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves' are sufficient to support a finding that the lewd act was committed by means of force." (*Ibid.*)

Here, the lewd act was the minor "rubb[ing] lotions all over [N.D.'s] naked butt[ocks.]"  Based on N.D.'s testimony and SAFE interview, a reasonable trier of fact could conclude beyond a reasonable doubt that the minor used force to commit that lewd act.

N.D. relayed that the minor yanked her pants and underwear down even though she repeatedly told him no and that she did not want to play the lotion game.  The minor grabbed her waist in a "really tight grip," preventing her from bending over to pull up her pants and underwear.  After rubbing lotion on her, he pulled her buttocks so close to his face that she could feel his breath.  At one point, the minor had a "grip on [N.D.'s] thigh."  When she attempted to bend over, "his grip would get tighter," and she could not move or escape.  Yanking down her clothes, gripping her tightly on the waist or thigh, and blocking her from pulling up her clothing were substantially different from or substantially greater than the physical force normally inherent in rubbing lotion on her buttocks.  (See e.g., *People v. Morales, supra*, 29 Cal.App.5th at p. 480 [act of grabbing,

6

holding, or restraining to facilitate the lewd act was substantial evidence of requisite force].)

The minor argues that N.D.'s statements were inconsistent on how hard he gripped her. But the trier of fact resolved any conflict in the evidence against the minor, and, as we have explained above, the circumstances reasonably justify the court's findings. That the circumstances might also reasonably be reconciled with a contrary finding does not mean the court erred or require reversal on appeal. (*People v. Hubbard, supra*, 63 Cal.4th at p. 392.) We also reject the minor's argument that the evidence admitted here is insufficient to prove force simply because the present facts differ from cases in which other courts have found substantial evidence to support a finding of force, which, in his view, are more egregious. (See *People v. Rundle* (2008) 43 Cal.4th 76, 137-138, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn.2 ["Reviewing the sufficiency of evidence, however, necessarily calls for analysis of the unique facts and inferences present in each case, and therefore comparisons between cases are of little value"].)

Applying the deferential substantial evidence standard of review, as we must, the evidence was sufficient to show the minor committed a lewd and lascivious act on nine-year-old N.D. by either force or duress. His appellate challenge to the juvenile court's true finding that he violated section 288, subdivision (b) therefore fails.

## III.  DISPOSITION

The judgment is affirmed.

/S/
RENNER, Acting P. J.

We concur:

/S/
KRAUSE, J.

/S/
BOULWARE EURIE, J.

8